**FILED - GR**
April 18, 2011 3:52 PM
TRACEY CORDES, CLERK
U.S. DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
BY __mrs__ / _____ SCANNED BY __JLv__ / __4/20__

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TERRI TERRELL,

        Plaintiff,

v.

ASSET MANAGEMENT
PROFESSIONALS, LLC and
MERRIMAN INVESTMENTS, LLC,

        Defendants.

_____/

**1:11-cv-397**
**Janet T. Neff**
**United States District Judge**

## Complaint

### I.    Introduction

    1.    This is an action for damages, brought against debt collectors for violating the

Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.,* Michigan Collection

Practices Act ("MCPA"), M.C.L. § 445.251 *et seq.,* and Michigan Occupational Code ("MOC"),

M.C.L § 339.901 *et seq*.

### II.    Jurisdiction

    2.    This Court has jurisdiction under 15 U.S.C. § 1692k(d) (FDCPA), and 28 U.S.C.

§ 1331. This Court has supplemental jurisdiction regarding plaintiff's state law claims under 28

U.S.C. § 1367. Venue in this judicial district is proper because the pertinent events took place

here.

### III.    Parties

    3.    Plaintiff Terri Terrell is a natural person residing in Kent County, Michigan. Ms.

Terrell is a "consumer" and "person" as the terms are defined and/or used in the FDCPA. Ms. Terrell is a "consumer," "debtor" and "person" as the terms are defined and/or used in the MCPA and MOC.

4.     Defendant Asset Management Professionals, LLC ("AMP") is a Georgia limited liability company, with its principal office located at 665 Molly Lane, Suite 110, Woodstock, Georgia 30189. The registered agent for AMP is Michael Rosenthal, 665 Molly Lane, Suite 110, Woodstock, Georgia 30189. AMP uses interstate commerce and the mails in a business the principal purpose of which is the collection of debts. AMP regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. AMP is a "debt collector" as the term is defined and/or used in the FDCPA. AMP is a "regulated person" as the term is defined and/or used in the MCPA. AMP is a "collection agency" and "licensee" as the terms are defined and/or used in the MOC.

5.     Defendant Merriman Investments LLC ("Merriman") is a Delaware limited liability company, with offices located at 140 Broadway, Floor 26, New York, New York 10005-1108. Merriman shares office space and is affiliated with a debt collection law firm named Eltman, Eltman & Cooper, P.C. The registered agent for Merriman is Registered Agent Solutions, Inc., 32 West Loockerman Street, Suite 201, Dover, Delaware 19904. Merriman uses interstate commerce and the mails in a business the principal purpose of which is the collection of debts. Merriman regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. Merriman is a "debt collector" as the term is defined and/or used in the FDCPA. Merriman is a "regulated person" as the term is defined and/or used in the MCPA. Merriman is a "collection agency" and "licensee" as the terms are defined and/or

used in the MOC.

## IV.    Facts

6.    Ms. Terrell had a credit account (No. 5260 3122 0030 4098) with Chase
Manhattan Bank ("Chase") which she used to purchase goods and/or services for personal,
family and household purposes. Any resulting obligation to pay money was a "debt" as the term
is defined and/or used in the FDCPA, MCPA and MOC.

7.    Chase claimed that Ms. Terrell failed to pay the debt.

8.    Chase sold the delinquent account and related debt.

9.    The delinquent account and related debt were purchased by a company named
CACH, LLC ("CACH").

10.    CACH is a limited liability company, with offices at 4340 South Monaco Street,
2nd Floor, Denver, Colorado 80237. CACH is in the business of purchasing delinquent consumer
debt, often paying less than five cents on the dollar. CACH uses interstate commerce and the
mails in a business the principal purpose of which is the collection of debts. CACH regularly
collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or
due another. CACH is a "debt collector" as the term is defined and/or used in the FDCPA.
CACH is a "regulated person" as the term is defined and used in the MCPA. CACH is a
"collection agency" and a "licensee" as the terms are defined and used in MOC.

11.    CACH hired G. Reynolds Sims & Associates, P.C. ("Sims") to collect the debt
from Ms. Terrell.

12.    Sims is a Michigan professional corporation, with offices at 2075 West Big
Beaver Road, Suite 200, Troy, Michigan 48084. Sims uses interstate commerce and the mails in

3

a business the principal purpose of which is the collection of debts. Sims regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. Sims is a "debt collector" as the term is defined and/or used in the FDCPA. Sims is a "regulated person" as the term is defined and used in the MCPA. Sims is a "collection agency" and a "licensee" as the terms are defined and used in MOC.

13.     On or about March 19, 2007, Sims filed a debt collection lawsuit ("Collection Lawsuit") on behalf of CACH and against Ms. Terrell in the 61st District Court for the State of Michigan, Case No. 2007-GC-1820.

14.     In or about February 2008, CACH and Ms. Terrell agreed to settle the Collection Lawsuit. The terms of settlement were memorialized in a letter dated February 21, 2008, sent by Sims to Ms. Terrell. The settlement provided that a consent judgment would enter in favor of CACH and against Ms. Terrell in the amount of $6,753.20, but that "[i]f $2,000.00 is paid within 36 months we will consider this case settled in full. . . . Upon payment in full, the Plaintiff will file a motion to set aside the judgment and file a dismissal with prejudice and without costs." A copy of the letter is attached hereto as Exhibit A.

15.     On or about March 13, 2008, the 61st District Court entered a consent judgment in the Collection Lawsuit, in favor of CACH and against Ms. Terrell in the amount of $6,753.20.

16.     In or before September 2008, Ms. Terrell paid $2,000.00 to Sims for the benefit of CACH.

17.     In September 2008, Sims drafted, signed, and sent to Ms. Terrell, a letter dated September 29, 2008, addressed to Equifax Credit Information Services, which stated that the Collection Lawsuit had been dismissed with prejudice and without costs to either party, and requested that the consumer reporting agency delete the obsolete and incorrect information

4

regarding the lawsuit, account and debt from Ms. Terrell's credit report and credit history. A
copy of the letter is attached hereto as Exhibit B (social security number redacted).

18.     In September 2008, Sims drafted, signed, and sent to Ms. Terrell, a letter dated
September 29, 2008, addressed to Experian, which stated that the Collection Lawsuit had been
dismissed with prejudice and without costs to either party, and requested that the consumer
reporting agency delete the obsolete and incorrect information regarding the lawsuit, account and
debt from Ms. Terrell's credit report and credit history. A copy of the letter is attached hereto as
Exhibit C (social security number redacted).

19.     In September 2008, Sims drafted, signed, and sent to Ms. Terrell, a letter dated
September 29, 2008, addressed to Trans-Union, which stated that the Collection Lawsuit had
been dismissed with prejudice and without costs to either party, and requested that the consumer
reporting agency delete the obsolete and incorrect information regarding lawsuit, account and
debt from Ms. Terrell's credit report and credit history. A copy of the letter is attached hereto as
Exhibit D (social security number redacted).

20.     CACH failed to file a motion in the Collection Lawsuit to set aside the judgment
and file a dismissal with prejudice and without costs as required by the agreement between
CACH and Ms. Terrell as stated in the February 21, 2008 letter sent by Sims to Ms. Terrell.

21.     Sims failed to file a motion in the Collection Lawsuit to set aside the judgment
and file a dismissal with prejudice and without costs as required by the agreement between
CACH and Ms. Terrell as stated in the February 21, 2008 letter sent by Sims to Ms. Terrell.

22.     Equifax, Experian and TransUnion to this day have continued to report as part of
Ms. Terrell's credit history, information regarding the judgment entered in the Collection

Lawsuit, causing Ms. Terrell's credit score to be lowered and causing Ms. Terrell to suffer actual damages.

23. CACH, despite having settled the Chase account in full with Ms. Terrell, turned around and sold the account.

24. CACH communicated to the purchaser the Chase account, credit information which CACH knew or should have known to be false.

25. CACH communicated to the purchaser the Chase account, credit information which CACH knew or should have known to be false, specifically, that the disputed debt was disputed.

26. CACH communicated to the purchaser the Chase account, credit information which CACH knew or should have known to be false, specifically, that Ms. Terrell owed money on the account, when in fact, CACH had settled the account in full.

27. By letter dated March 15, 2011, AMP wrote Ms. Terrell, stated that AMP's client, Merriman, had purchased the Chase account, and demanded that Ms. Terrell pay a balance of $7,452.16. A copy of the letter is attached hereto as Exhibit E.

28. The March 15, 2011 letter from AMP to Ms. Terrell falsely stated that Merriman had purchased the account from "CHASE MANHATTAN BANK." Merriman did not purchase the account from Chase. Merriman purchased the account from CACH or an assignee of CACH.

29. Ms. Terrell telephoned AMP and spoke with an AMP employee identified as Ruth Page. Ms. Terrell explained to the AMP employee that Ms. Terrell had paid $2,000.00 to CACH as payment in full of the judgment in the Collection Lawsuit and that she no longer owed anything on the Chase account. The AMP employee instructed Ms. Terrell to fax to AMP, proof

6

that Ms. Terrell had paid the judgment in full.

30.     On or about March 17, 2011, Ms. Terrell telephoned Sims. Ms. Terrell complained to Sims that she had received from AMP a letter dated March 15, 2011, demanding payment of money in connection with the settled and paid Chase account.

31.     On or about March 17, 2011, Sims signed a Satisfaction of Judgment in the Collection Lawsuit. A copy of the Satisfaction of Judgment is attached hereto as Exhibit F.

32.     On or about March 21, 2011, Sims filed with the 61st District Court, a Satisfaction of Judgment in the Collection Lawsuit.

33.     On or about March 24, 2011, Ms. Terrell received by mail a copy of the Satisfaction of Judgment filed by Sims with the 61st District Court in the Collection Lawsuit.

34.     On March 24, 2011, Ms. Terrell faxed to AMP, a copy of the Satisfaction of Judgment filed by Sims with the 61st District Court in the Collection Lawsuit. A copy of the Fax Cover Sheet and related Transmission Verification Report are attached hereto as Exhibit G.

35.     On March 24, 2011, AMP received by fax from Ms. Terrell, a copy of the Satisfaction of Judgment filed by Sims with the 61st District Court in the Collection Lawsuit.

36.     On April 15, 2011, AMP telephoned Ms. Terrell and left the following computer-generated voice message: "This is a message for Terri Terrell. This is not a sales or marketing call. To retrieve you message press the star key now, or call us back at 1-888-355-7515. Thank you."

37.     AMP telephoned Ms. Terrell on April 15, 2011 in connection with an effort to collect an alleged debt.

38.     The only reason AMP telephoned Ms. Terrell was to attempt to collect a debt.

7

39.     AMP telephoned Ms. Terrell and left a recorded message on Ms. Terrell's voice mail or telephone answering machine for the purpose of inducing Ms. Terrell to telephone AMP to discuss an alleged debt.

40.     The recorded message left by AMP on Ms. Terrell's voice mail or telephone answering machine conveyed information regarding a debt directly or indirectly to Ms. Terrell.

41.     The recorded message left by AMP on Ms. Terrell's voice mail or telephone answering machine was a "communication" as the term is defined and/or used in the FDCPA, MCPA and MOC.

42.     The recorded message left by AMP on Ms. Terrell's voice mail or telephone answering machine did not disclose in the message that the telephone call was from a debt collector.

43.     By failing to disclose in a recorded message left AMP on Ms. Terrell's voice mail or telephone answering machine that the caller was a debt collector, AMP violated the FDCPA, 15 U.S.C. § 1692e(11).

44.     When AMP left the recorded message for Ms. Terrell on her voice mail or telephone answering machine, AMP was aware or should have been aware of multiple published federal district court opinions in which the courts held that it is unlawful for a debt collector to leave a recorded message for a debtor/consumer without identifying itself as a debt collector. *See e.g., Joseph v. J.J. Mac Intyre Companies, L.L.C.*, 281 F.Supp.2d 1156 (N.D. Cal. 2003); *Hosseinzadeh v. M.R.S. Associates, Inc.,* 387 F.Supp.2d 1104 (C.D. Cal. 2005); *Foti v. NCO Financial Systems, Inc.,* 424 F.Supp.2d 643 (S.D.N.Y. 2006).

45.     When AMP left the recorded message for Ms. Terrell on her voice mail or

8

telephone answering machine, it was the practice of AMP in connection with the collection of debts to leave a recorded message on the consumer's voice mail or telephone answering machine without disclosing in the message that the telephone call was from a debt collector.

46.     The recorded message left by AMP on Ms. Terrell's voice mail or telephone answering machine did not disclose in the message that the telephone call was from AMP.

47.     The recorded message left by AMP on Ms. Terrell's voice mail or telephone answering machine did not disclose in the message the name of the company that was placing the telephone call to Ms. Terrell.

48.     AMP left a recorded message on Ms. Terrell's voice mail or telephone answering machine that did not include a meaningful disclosure of the caller's identity, which violated the FDCPA, 15 U.S.C. § 1692d(6).

49.     When AMP left the recorded message for Ms. Terrell on her voice mail or telephone answering machine that did not disclose in the message the name of the company that was placing the telephone call to Ms. Terrell, it was the practice of AMP in connection with the collection of debts to leave a recorded message on the consumer's voice mail or telephone answering machine without disclosing in the message the name of the company that was placing the telephone call.

50.     The recorded message left by AMP on Ms. Terrell's voice mail or telephone answering machine did not reveal in the messages the purpose of the telephone call.

51.     The recorded message left by AMP on Ms. Terrell's voice mail or telephone answering machine concealed the purpose of the telephone call.

52.     The recorded message left by AMP on Ms. Terrell's voice mail or telephone

9

answering machine did not reveal and/or concealed the purpose of the communication, which violated the MCPA, § 445.252(e) and the MOC, M.C.L. § 339.915(e).

53.     When AMP left the recorded message for Ms. Terrell on her voice mail or telephone answering machine, it was the practice of AMP in connection with the collection of debts to leave a recorded message on the consumer's voice mail or telephone answering machine without revealing the purpose of the telephone call.

54.     When AMP left the recorded message for Ms. Terrell on her voice mail or telephone answering machine, it was the practice of AMP in connection with the collection of debts to leave a recorded message on the consumer's voice mail or telephone answering machine that concealed the purpose of the telephone call.

55.     In the one-year period immediately preceding the filing of this complaint, AMP in efforts to collect a debt telephoned more than one hundred consumers with Michigan addresses and left recorded messages on the voice mail or telephone answering machine of the person called, without disclosing in the message that the telephone call was from a debt collector.

56.     In the one-year period immediately preceding the filing of this complaint, AMP in efforts to collect a debt telephoned more than one hundred consumers with Michigan addresses and left recorded messages on the voice mail or telephone answering machine of the person called, without disclosing in the message the name of the company that was placing the telephone call.

57.     In the one-year period immediately preceding the filing of this complaint, AMP in efforts to collect a debt telephoned more than one hundred consumers with Michigan addresses and left recorded messages on the voice mail or telephone answering machine of the person

called, without revealing in the message the purpose of the telephone call.

58.    In the one-year period immediately preceding the filing of this complaint, AMP in efforts to collect a debt telephoned more than one hundred consumers with Michigan addresses and left recorded messages on the voice mail or telephone answering machine of the person called, which message concealed the purpose of the telephone call.

59.    On or about April 15, 2011, Ms. Terrell spoke by telephone with an AMP employee identified as Ruth Page. Ms. Terrell stated that she was calling to dispute the debt. In the ensuing conversation, the AMP employee made the following statements:

a)    The debt was a "legal judgment," and accordingly, derogatory information regarding the debt would remain on Ms. Terrell's credit reports for more than seven years.

b)    Derogatory information regarding the debt would remain on Ms. Terrell's credit reports for a period of seven years from March 14, 2011, the date the account was received by AMP.

c)    The seven-year period for reporting the debt on Ms. Terrell's credit reports could start over at any time, depending upon the new activity on the account, meaning that whenever the owner of the debt hires a different collection agency to collect the debt, or if the debt is sold, then the seven-year reporting period could start all over again.

d)    There is nothing that Ms. Terrell can do to make AMP stop contacting her, except to pay the debt.

60.    The Fair Credit Reporting Act,15 U.S.C. § 1681 *et seq.,* states that no consumer

11

reporting agency may make any consumer report containing information regarding "accounts placed for collection or charged to profit and loss which antedate the report by more than seven years." 15 U.S.C. § 1681c(a)(4). The running of the seven-year period begins "upon the expiration of the 180-day period beginning on the date of the commencement of the delinquency which immediately preceded the collection activity, charge to profit and loss, or similar action." 15 U.S.C. § 1681c(c)(1).

61.     The Fair Credit Reporting Act,15 U.S.C. § 1681 *et seq.,* states that no consumer reporting agency may make any consumer report containing information regarding "civil suits" and "civil judgments" that from the date of entry, antedate the report by more than seven years or until the governing statute of limitations has expired, whichever is the longer period." 15 U.S.C. § 1681c(a)(2).

62.     Credit reporting constitutes an attempt to collect a debt. *See, e.g., Rivera v. Bank One,* 145 F.R.D. 614, 623 (D.P.R. 1993)(a creditor's report of a debt to a consumer reporting agency is a "powerful tool, designed, in part, to wrench compliance with payment terms from its cardholder"); *Matter of Sommersdorf,* 139 B.R. 700, 701 (Bankr.S.D. Ohio 1991); *Ditty v. CheckRite, Ltd.,* 973 F.Supp. 1320, 1331 (D.Utah 1997).

63.     The AMP employee in her telephone conversation with Ms. Terrell falsely represented to Ms. Terrell the length of time for which derogatory information regarding the account, related debt and judgment could remain on Ms. Terrell's consumer report.

64      AMP violated the FDCPA when the AMP employee made false statements to Ms. Terrell regarding the length of time for which derogatory information regarding the account, related debt, and judgment could continue to be reported on Ms. Terrell's consumer report.

12

*Shields v. Merchants & Medical Credit Corporation, Inc.,* 2010 WL 2613086 (E.D. Mich., June 28, 2010).

65.     The FDCPA states in pertinent part: "If a consumer notifies a debt collector in writing that the consumer refuses to pay a debt or that the consumer wishes the debt collector to cease further communication with the consumer, the debt collector shall not communicate further with the consumer with respect to such debt . . . ." 15 U.S.C. § 1692b(c).

66.     The AMP employee falsely stated to Ms. Terrell that the only way Ms. Terrell could make AMP stop contacting Ms. Terrell would be for Ms. Terrell to pay the alleged debt.

67.     Defendants and their employees misrepresented the character, amount and legal status of a debt.

68.     Defendants and their employees continued to collect the debt even after being provided information showing that no debt was owed.

69.     The AMP employee intended to speak the words she spoke to Ms. Terrell.

70.     The acts and omissions of AMP and its employees done in connection with efforts to collect a debt from Ms. Terrell were done intentionally and wilfully.

71.     AMP and its employees intentionally and wilfully violated the FDCPA, MCPA and MOC.

72.     The acts and omissions of Merriman and its employees done in connection with efforts to collect a debt from Ms. Terrell were done intentionally and wilfully.

73.     Merriman and its employees intentionally and wilfully violated the FDCPA, MCPA and MOC.

74.     Merriman has derivative liability for the acts and omissions of AMP.

13

75. Merriman has been sued in the past for attempting to collect a debt despite the fact that the underlying judgment had been paid. *Linda Mason v. Eltman, Eltman & Cooper, P.C., Merriman Investments, LLC and CACV of Colorado, LLC,* U.S. District Court, Minnesota, Case No. 2011-cv-86.

76. As an actual and proximate result of the acts and omissions of defendants and their employees, plaintiff has suffered actual damages and injury, including but not limited to, financial loss, fear, stress, mental anguish, emotional stress, acute embarrassment and suffering for which she should be compensated in an amount to be established by jury and at trial.

## V. Claims for Relief

### Count 1– Fair Debt Collection Practices Act

77. Plaintiff incorporates the foregoing paragraphs by reference.

78. Defendants have violated the FDCPA. Defendants' violations of the FDCPA include, but are not necessarily limited to, the following:

a) Defendants violated 15 U.S.C. § 1692b;

b) Defendants violated 15 U.S.C. § 1692d by engaging in conduct, the natural consequence of which is to harass, oppress, or abuse a person in connection with the collection of a debt;

c) Defendants violated 15 U.S.C. § 1692e by using false, deceptive and misleading representations and means in connection with the collection or attempted collection of a debt;

d) Defendant violated 15 U.S.C. § 1692f by using unfair and unconscionable means to collect or attempt to collect a debt from plaintiff; and

14

e)      Defendants violated 15 U.S.C. § 1692g.

.    **Wherefore,** plaintiff seeks judgment against defendants for:

a)      Actual damages pursuant to 15 U.S.C. § 1692k(a)(1);

b)      Statutory damages pursuant to 15 U.S.C. § 1692k(a)(2)(A);

c)      Costs and reasonable attorney's fees pursuant to 15 U.S.C. § 1692k(a)(3); and

d)      Such further relief as the court deems just and proper.

### Count 2– Michigan Collection Practices Act

79.      Plaintiff incorporates the foregoing paragraphs by reference.

80.      Defendants have violated the MCPA.  Defendants' violations of the MCPA

include, but are not necessarily limited to, the following:

a)      Defendants violated M.C.L. § 445.252(e) by making an inaccurate, misleading,
untrue, or deceptive statement or claim in a communication to collect a debt;

b)      Defendants violated M.C.L. § 445.252(e) by concealing or not revealing the
purpose of a communication when it is made in connection with collecting a debt;

c)      Defendants violated M.C.L. § 445.252(f) by misrepresenting in a communication
with a debtor the following: (i) the legal status of a legal action being taken or
threatened; and (ii) the legal rights of a creditor or debtor;

d)      Defendants violated M.C.L. § 445.252(g) by communicating with a debtor
without accurately disclosing the caller's identity;

e)      Defendants violated M.C.L. § 445.252(n) by using a harassing, oppressive, or
abusive method to collect a debt; and

f)      Defendants violated M.C.L. § 445.252(q) by failing to implement a procedure

15

designed to prevent a violation by an employee.

**Wherefore,** plaintiff seeks judgment against defendants for:

a)   Actual damages pursuant to M.C.L. § 445.257(2);

b)   Treble the actual damages pursuant to M.C.L. § 445.257(2);

c)   Statutory damages pursuant to M.C.L. § 445.257(2); and

d)   Reasonable attorney's fees and court costs pursuant to M.C.L. § 445.257(2).

### Count 3 – Michigan Occupational Code

81.   Plaintiff incorporates the foregoing paragraphs by reference.

82.   Defendants have violated the MOC. Defendants' violations include, but are not necessarily limited to, the following:

a)   Defendants violated M.C.L. § 339.915(e) by making an inaccurate, misleading, untrue, or deceptive statement or claim in a communication to collect a debt;

b)   Defendants violated M.C.L. § 339.915(e) by concealing or not revealing the purpose of a communication when it is made in connection with collecting a debt;

c)   Defendants violated M.C.L. § 339.915(f) by misrepresenting in a communication with a debtor the following: (i) the legal status of a legal action being taken or threatened, and (ii) the legal rights of a creditor or debtor;

d)   Defendants violated M.C.L. § 339.915(g) by communicating with a debtor without accurately disclosing the caller's identity; and

e)   Defendants violated M.C.L. § 339.915(n) by using a harassing, oppressive, or abusive method to collect a debt; and

f)   Defendants violated M.C.L. § 339.915(q) by failing to implement a procedure

16

designed to prevent a violation by an employee.

**Wherefore,** plaintiff seeks judgment against defendants for:

a)    Actual damages pursuant to M.C.L. § 339.916(2);

b)    Treble the actual damages pursuant to M.C.L. § 339.916(2);

c)    Statutory damages pursuant to M.C.L. § 339.916(2); and

d)    Reasonable attorney's fees and court costs pursuant to M.C.L. § 339.916(2).


### Demand for Trial by Jury

Plaintiff demands trial by jury.

Dated: April 18, 2011

_____
Phillip C. Rogers (P34356)
Attorney for Plaintiff
40 Pearl Street, N.W., Suite 336
Grand Rapids, Michigan 49503-3026
(616) 776-1176
ConsumerLawyer@aol.com

17